IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMELIA S.[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 3:22-cv-00250-CL

**OPINION AND ORDER**

**CLARKE**, United States Magistrate Judge.

Plaintiff Amelia S. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). *See* ECF No. 7. For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits ("DBI") under Title II in June 2018 with an alleged onset date of June 6, 2016. Tr. 187[2]. Plaintiff's application was initially denied in March 2019, and again upon reconsideration in August 2019. Tr. 56–79. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 94–95, and a hearing was held on December 16, 2020. Tr. 30. On February 5, 2021, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 25. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. Plaintiff's timely appealed followed.

## FACTUAL BACKGROUND

Plaintiff was 33 years old on her alleged onset date. Tr. 57. She has a high school diploma with one year of college completed and past relevant work as a loan administrator and customer service representative. Tr. 23, 223. Plaintiff alleges disability based on spastic hemiplegic cerebral palsy and depression. Tr. 222.

## DISABILITY ANALYIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially

---

[2] "Tr." Citations are to the Administrative Record. ECF No. 15.

dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

5. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is

> not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954–55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953–54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954–55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 6, 2016, the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff had the following severe impairment: cerebral palsy. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of a listed impairment. Tr. 19. The ALJ found that Plaintiff had the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally climb ramps/stairs but never ropes, ladders, or scaffolds; she can occasionally balance, stoop, crouch, crawl, kneel; she can occasionally finger and handle with the right

>upper extremity; she should be able to change position between sitting and standing in 30-60 minute intervals.

Tr. 20. At step four, the ALJ determined that Plaintiff has past relevant work as a loan administrator and a customer service representative and is still able to perform her past relevant work. Tr. 23. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy such that Plaintiff could sustain employment despite her impairments. Tr. 24–25. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 25.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the

evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff asserts that remand is warranted because the ALJ erred in their RFC determination because: (1) the ALJ erred in their assessment of the medical opinion evidence; (2) the ALJ erred in their assessment of the Plaintiff's subjective symptom testimony; and (3) the ALJ erred in their assessment of the Plaintiff's RFC. For the reasons that follow, the Court concludes that reversal and remand for further proceedings is warranted in this case.

I.  **The ALJ properly evaluated and credited the medical opinion of Dr. Finch, but the ALJ erred by not properly evaluating the medical opinions of Dr. Csaszar and two state agency doctors.**

Under prior Social Security regulations, a hierarchy of medical opinions dictated the weight that must be given by an ALJ: treating doctors were generally given the most weight and non-examining doctors were generally given the least weight. *See* 20 C.F.R. §§ 404.1527, 416.927 (1991); 56 Fed. Reg. 36,932 (Aug. 1, 1991). For applications filed on or after March 27, 2017, the new regulations eliminate the old hierarchy of medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Plaintiff filed an application for disability insurance benefits on March 2, 2018. Thus, the Commissioner's new regulations apply to the ALJ's assessment of this opinion. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (correcting technical errors).

The new rules no longer provide for any inherent weight: "We [the SSA] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The SSA "considers" various medical opinions for claims filed on or after March 27, 2017, and determines which medical opinions are most persuasive. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating which opinions are most persuasive, the ALJ considers several factors. The two most important factors are supportability & consistency. *Id.* Secondary factors include the relationship with the claimant, specialization, and other factors. *Id.* at 404.1520c(c), 416.920c(c).

### A.  Dr. Clyde Mitchell Finch, M.D.

Dr. Finch provided a medical opinion questionnaire assessing Plaintiff's workplace limitations based on her impairments. Tr. 646–653. In the questionnaire, Dr. Finch stated that

Plaintiff can sit, stand, and walk for less than two hours in an eight hour workday, must periodically change positions between sitting and standing every 20-30 minutes, and must be able to shift at will from sitting or standing and walking. Tr. 649–650. Dr. Finch also stated that Plaintiff suffers from no psychological conditions that affect her physical condition, such as depression. Tr. 648. Dr. Finch then went on to state that Plaintiff could rarely twist, stoop, crouch, and climb stairs, while she could never climb ladders, and that she could rarely lift and carry ten pounds or less, while never being able to lift and carry twenty pounds or more. Tr. 650–651. Furthermore, Dr. Finch stated Plaintiff would miss four or more days of work a month. Tr. 652. Dr. Finch based his opinion on his treatment of Plaintiff's left and right leg weakness and spasticity. Tr. 646. The ALJ determined that Dr. Finch's medical opinion was unpersuasive because it was inconsistent with his own treatment records.

Plaintiff contends that the ALJ failed to provide substantial evidence to support their interpretation of Dr. Finch's medical opinion.

Plaintiff is incorrect, and the ALJ did not err. Dr. Finch provided medical records showing he saw Plaintiff starting on February 2018 until her last visit in February 2020. Tr. 358, 602. In his first meeting with Plaintiff, he observed that Plaintiff's right hand was slightly smaller than her left, her right arm and leg were spastic, her grip strength in her left hand was 5/5 but her right was 4/5, and her right side had decreased vibration and rapid alternating movement. Tr. 361. Plaintiff's gait was also normal, and she was given referrals to occupational and physical therapies. Tr. 362. When Plaintiff presented for an occupational therapy evaluation in February 2018, Plaintiff had left hand dominance with 5/5 strength, with a grip strength of 64 pounds, and flexion on her left upper extremity as well as full range of motion. Tr. 354–55. Her right hand had 4/5 strength with less than half the grip and pinch strength of her left, at 10 pounds, as well

as 4/5 flexion on her right upper extremity. Tr. 354–55. At her physical therapy evaluation in March 2018, Plaintiff complained of right sided weakness with tingling and numbness, which affected her standing and walking tolerance. Tr. 352. She received a functional gait assessment score of 26/30, 4/5 in right hip flexion, quads, hamstrings, and ankle, while having 5/5 on her left. Tr. 351. In both cases, she was given therapy interventions and assessed as having good potential to achieve improvements. Tr. 351–52, 356. At a follow-up appointment in March 2018, her motor exam reflected mild right upper and lower extremity weakness with decreased rapid alternating movements and dexterity. Tr. 342. It was also noted that her diagnosis of cerebral palsy is not a progressive condition and occupational and physical therapy were recommended to help treat it. Tr. 343. After self-terminating her physical and occupational therapy by not returning since her initial evaluations, she injured her right index finger which did not tolerate strength testing because of her injury. Tr. 338, 340. Plaintiff did report doing "some" at home therapy. Tr. 338. Dr. Finch provided another referral for occupational therapy which Plaintiff followed up on in July 2018. Tr. 335. In this assessment, Plaintiff's left hand grip strength had decreased to 38 pounds while her right hand grip strength had increased to 20 pounds. Tr. 333–34. Plaintiff requested once a month appointments but was told once every other week was encouraged in order to make progress with strength and dexterity and decreased pain and limitations in her right upper extremity. *Id.* Plaintiff attended another therapy session at the end of July, and then once again in August, but did not return after that. Tr. 329–30. Plaintiff was not seen again for her cerebral palsy by Dr. Finch until February 2020. Tr. 602. Plaintiff complained that starting in July or August 2019, she was having left elbow pain that presented as a constant burning and tingling pain with numbness down the forearm and into her fingers but there was no weakness. *Id.* Dr. Finch believed the pain was caused by ulnar neuropathy at the left elbow, to

Page 9 of 16 – Opinion and Order

which overuse of her left extremity to compensate for her right may have contributed. *Id.* While Plaintiff still had mild upper and lower right extremity weakness and decreased rapid alternating movements and dexterity, her condition remained stable without muscle atrophy. Tr. 604. This stable condition was reflected in her return to occupational therapy for another evaluation in June 2020, where her results were largely consistent with her last visit in August 2018, with her left hand grip strength averaging 30 pounds while her right averaged 10. Tr. 333, 515. Dr. Finch also observed that she had hyperreflexia in her upper and lower right extremities, which were also stable. *Id.*

Comparing Dr. Finch's questionnaire to his medical records shows an inconsistency between the extreme limitations he placed on Plaintiff's physical abilities and the absence of objective findings to support those limitations. Tr. 329–30, 335, 338, 340, 342–43, 351–52, 354, 354–56, 358, 361–62, 602, 604, 646–53. Inconsistency with medical records and inadequate support by clinical findings serve as specific, legitimate reasons for rejecting a physician's opinion. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995). In light of this evidence, the Court concludes that the ALJ's interpretation of the record was reasonable, and the Court will not second guess the ALJ's findings. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("[W]e conclude [that the ALJ's] interpretation of the evidence is reasonable and we will not second-guess it.") (citation omitted).

### B. Dr. Michael Csaszar, M.D.

Dr. Csaszar also provided a medical opinion questionnaire assessing Plaintiff's workplace limitations based on her impairments. Tr. 675–82. In the questionnaire, Dr. Csaszar

stated that Plaintiff would need to work at a reduced pace if employed full time, her condition would not be made worse by working full time, and that her mental health did not impact her physical condition. Tr. 676–77. Dr. Csaszar also stated that Plaintiff is capable of high stress work, must change positions or posture more than once every two hours, her condition does not affect her ability to walk when doing normal activities of daily living, and that her limb weakness does affect her gross and dexterous movements. Tr. 678. Dr. Csaszar goes on to say there is no limit on Plaintiff's ability to stand, walk, or sit in an eight hour workday. *Id.* He also found Plaintiff could sit for two to three hours before changing position, could stand for 10-15 minutes before needing to change position, would need to walk around for 20 minutes for 1-2 minutes, but does not need to shift at will from sitting to standing or walking and would not need to lie down. Tr. 679. Plaintiff could occasionally stoop, crouch, or climb stairs, but could rarely twist and only frequently climb ladders. *Id.* Plaintiff's ability to reach, handle, finger, feel, push and pull are also affected by her condition. Tr. 680. When it came to Plaintiff's ability to lift and carry, she could rarely lift or 50 pounds or more, occasionally 20 pounds, and frequently 10 pounds or less. *Id.* Dr. Csaszar also noted that with appropriate accommodations, Plaintiff would not need to miss work. Tr. 681. The ALJ found Dr. Csaszar's medical opinion unpersuasive because it is inconsistent with his treatment records and the overall medical record. Tr. 22.

Plaintiff contends that the ALJ failed to provide substantial evidence to support their interpretation of Dr. Csaszar's medical opinion.

Plaintiff is correct, and the ALJ did err. The ALJ noted that the Plaintiff denied weakness, numbness, or instability in a single visit to Dr. Csaszar. Tr. 22, citing Tr. 558. The ALJ is correct, but fails to clarify that the weakness, numbness, and instability Plaintiff is referencing is in relation to her left side, while her cerebral palsy affects her right, to which she still experiences

weakness. Tr. 558. The pain Plaintiff experiences in her left comes from her elbow, radiates down into her hand, and is due to overuse because of her cerebral palsy. *Id.* The ALJ also finds fault with the medical opinion because the Plaintiff reportedly went on bike rides with her kids as well as walks for exercise. Tr. 22, citing Tr. 548. The ALJ does not, however, explain how this makes Dr. Csaszar's opinion unpersuasive. In fact, in his opinion, he specifically states Plaintiff has no limitations in standing and walking, nor does he say she is incapable of riding a bike due to her condition. Tr. 678. The ALJ goes on to note that Plaintiff's mild weakness on her right side and her normal reflexes and gait also undermine Dr. Csaszar's medical opinion. Tr. 22. The ALJ, however, does not explain how Plaintiff's mild weakness on her right side undermines Dr. Csaszar's assessment. If anything, Plaintiff's occupational therapy records support Dr. Csaszar's limitations of rarely lifting 50 pounds or more, occasionally lifting 20 pounds, and frequently lifting 10 pounds, along with impacting Plaintiff's ability to reach, handle, finger, feel, push and pull. Tr. 333–34, 354–55, 515, 680. Given the lack of evidence supporting the ALJ's reasoning, the Court concludes the ALJ did err in their assessment of Dr. Csaszar's medical opinion.

### C. Dr. Edward Layne, M.D., and Dr. Susan Moner, M.D.

The state agency doctors above provided opinions limiting Plaintiff to occasionally lifting and carrying 20 pounds, frequently for 10 pounds, and able to sit, stand, or walk six hours in an eight hour day. Tr. 64, 75–76. They also found that Plaintiff could occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, could occasionally balance, and frequently stoop, kneel, crouch, and crawl. Tr. 64–65, 76. Due to Plaintiff's cerebral palsy, they also determined Plaintiff's fingering and handling were limited to occasionally. Tr. 65, 77. The ALJ found these opinions persuasive and used them when calculating the Plaintiff's RFC. Tr. 20.

Plaintiff argues the ALJ improperly found the agency doctors' opinions persuasive because they were unsupported by substantial evidence.

Plaintiff is correct. The ALJ found the agency doctors' opinions persuasive because they were supported by their analysis of the medical record and because they were consistent with the objective medical record. Tr. 22. As examples, the ALJ noted that Plaintiff had 4/5 strength in her right hand, is able to perform self-care, cook meals, clean, and drive, and medical imaging of her brain showed no acute intracranial abnormality. *Id.* While the Plaintiff does have 4/5 strength in her right hand, her testing showed that her grip strength started at 10 pounds, grew to 20 pounds due to occupational therapy, and then reduced back down to 10 pounds when she stopped and returned for another assessment. Tr. 482, 504, 515 During this same time, her pinch strength started at 5 pounds and fell to 3 pounds. Tr. 482, 504. Plaintiff's ability to independently self-care, to cook meals, to clean, and drive, cannot, in this case, serve as sufficient reasoning when determining the persuasiveness of the doctors' opinions. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 ("This court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))). As for the brain imaging, the ALJ does not explain why the medical imaging supports the findings of the agency's physicians, and therefore does not give this Court a way to meaningfully review it.

The ALJ goes on to state that the physicians' opinions are consistent with the objective medical record because Plaintiff's right sided weakness can be addressed with occupational and physical therapy, that Plaintiff denied pain, and that Plaintiff had normal reflexes and gait. Tr.

22, citing Tr. 319, 325, 347, 632, 672. While it is true that Plaintiff's gait and reflexes were all normal at the cited appointments, none of them reflect that Plaintiff denied pain. Furthermore, each of the instances of cited evidence were for things unrelated to Plaintiff's cerebral palsy. The ALJ uses instances of Plaintiff being seen for diarrhea, for preventative PAP tests, and for a regular physical. Tr. 319, 325, 347, 632, 672. None of these serve as a proper basis upon which the ALJ could rely in making their decision. Therefore, the ALJ improperly found the opinions of the agency's physicians persuasive.

**II.     The Plaintiff's RFC was improperly assessed.**

Plaintiff argues that the ALJ did not properly assess Plaintiff's past relevant work at step four of the sequential process, and that not all of Plaintiff's medically determinable impairments were included in the ALJ's RFC at step five. Pl.'s Op. Br. 15–17, ECF 16.

At step four, the ALJ found that Plaintiff was capable of performing light work with some limitations, including that Plaintiff can occasionally climb ramps/stairs but never ropes, ladders, or scaffolds; she can occasionally balance, stoop, crouch, crawl, kneel; she can occasionally finger and handle with the right upper extremity; she should be able to change position between sitting and standing in 30-60 minute intervals. Tr. 20. At step five, the ALJ concluded that Plaintiff could perform not only her past relevant work but also that there were other jobs in the national economy existing in significant numbers that Plaintiff could also do. Tr. 24–25. Using the vocational expert's testimony, the ALJ determined that Plaintiff could work as a surveillance system monitor (DOT 379.367-010, approx. 96,260 jobs in the national economy), a charge account clerk (DOT 205.367-014, approx. 200,150 jobs in the national economy), and a call-out operator (DOT 237.367-014, approx. 258,000 jobs in the national economy). Tr. 24–25.

In determining the Plaintiff's RFC, an ALJ must consider all relevant evidence in the record. *See* SSR 96-8p; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). As discussed above, the ALJ failed to provide substantial evidence when finding Dr. Csaszar's medical opinion unpersuasive. Among Dr. Csaszar's limitations was a determination that Plaintiff would need appropriate accommodations for the weakness and loss of dexterity in her right hand. Tr. 681. Furthermore, Plaintiff's records from occupational therapy reflect that Plaintiff's right hand lacks a good deal of dexterity. Tr. 330, 334, 501, 504, 511, 515, 523. While it is unclear exactly how much functionality Plaintiff's right hand retains, it is clear Plaintiff suffers from a loss of functionality that was not properly addressed in her RFC, nor in the vocational expert's testimony. For example, the jobs the vocational expert provided, as well as Plaintiff's past relevant work, are all classified as sedentary jobs. Normally, a Plaintiff that is capable of light work is also considered capable of sedentary work, unless there are additional limiting factors, such as loss of fine dexterity. *See* 20 C.F.R. § 404.1567(b). Plaintiff suffers from a loss of fine dexterity in her right hand and yet this loss was not incorporated into her RFC nor into the jobs provided. Therefore, the ALJ erred at step four and five.

## III.   Remedy

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g., Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting

evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, there remain questions surrounding the functionality of the Plaintiff's right hand, improperly rejected medical opinion evidence, and the need for a new RFC determination. As a result, the ALJ's decision was not supported by substantial evidence. Remanding for further proceedings would allow the ALJ to have the Plaintiff's right hand functionality tested as well as give the ALJ an opportunity to provide proper reasons for rejecting Dr. Csaszar's medical opinion or to accept it and provide an updated RFC and vocational expert testimony.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED and DATED this 21 day of February, 2024.

MARK D. CLARKE
United States Magistrate Judge